UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

IN RE:

J.H. INVESTMENT SERVICES, INC., et al.,

    Debtors.
_____/

MICHAEL ZUPPARDO, Creditor,

    Appellant,

vs.                                                          Case No. 8:08-cv-02321-JDW

STEVEN S. OSCHER, Trustee, and
B.C. PROPERTIES LIMITED, LLC,
Creditor,

    Appellees.
_____/

## OPINION

This appeal arises from several orders of the bankruptcy court which ultimately extinguished Michael Zuppardo's interest in a condominium unit he purchased from the debtor and denied his recovery of the proceeds from its sale. Because Zuppardo has not shown reversible error, the bankruptcy court's orders granting summary judgment in favor of the Trustee, approving the Trustee's settlement with BC Properties Limited, LLC ("BC Properties"), and denying Zuppardo's motion for reconsideration are **AFFIRMED**.

*I.    Background*

Jackson Hewitt Plaza is a nineteen-unit commercial condominium complex located in Sarasota, Florida. The debtor, J.H. Investment Services, Inc. ("JHIS"), owned eleven units. Two entities related to the debtor, S&P Enterprises, LLC and M.P.L. Holding, Ltd., owned three units.

1

Zuppardo agreed to purchase Unit 19 from JHIS, and on September 1, 1999, he entered into an installment contract, purchase money note, and purchase money mortgage. Under the terms of the parties' agreement, the contract, note, and mortgage would not be recorded, and the deed to Unit 19 would remain in the name of JHIS pending final payment. Zuppardo agreed that JHIS's vice president, Daniel Prewett, had the authority to vote all condominium shares allocated to Unit 19. Zuppardo acknowledged that JHIS held a mortgage on the unit and agreed that it would remain in place until he made the final payment. In accordance with the agreement, no documents evidencing Zuppardo's interest in Unit 19 were recorded.

On or about February 20, 2007, JHIS, S&P Enterprises, LLC, and M.P.L. Holding, Ltd. sold their fourteen Jackson Hewitt Plaza condominium units to BC Properties for a total purchase price of $3,300,000. Notwithstanding the installment contract with Zuppardo, JHIS included Unit 19 in the sale. After satisfaction of an underlying mortgage on the property, the net sale proceeds amounted to $302,376.36 (the "Sale Proceeds"). The closing firm, Dunlap & Moran, P.A. ("Dunlap & Moran"), attempted to disburse the Sale Proceeds to JHIS and the other sellers but was unable to do so.

Zuppardo learned of the transaction two days after the closing. On February 26, 2007, his counsel, Anthony S. Lefco, met with the closing attorney, Scott Dunlap, and requested that the transaction not be completed. The same day, BC Properties recorded three warranty deeds, evidencing its ownership of the fourteen condominium units. Thereafter, Zuppardo and his counsel communicated with Dunlap, as well as several employees of JHIS, in an effort to prevent disbursement of the Sale Proceeds to the sellers. According to Zuppardo, his counsel's efforts led one individual to return a portion of the Sale Proceeds to Dunlap and another to assist in closing one of JHIS's bank accounts. On March 2, 2007, Zuppardo commenced an action against JHIS, Prewett,

Dunlap & Moran, and others to recover his interest in the Sale Proceeds. Dunlap & Moran, aware of several claims to the Sale Proceeds, filed an interpleader action on March 7, 2007.

On March 29, 2007, Zuppardo recorded an amended and revised satisfaction of mortgage related to Unit 19. The document acknowledged full payment under the terms of his agreement with JHIS and attached the note, mortgage, and installment contract.

On May 17, 2007, Zuppardo recorded a notice of redemption rights related to thirteen of the condominium units. The notice, which exempted Unit 19, stated that the condominium association's board of directors had not approved the transaction with BC Properties and Zuppardo had a right to redeem the units.

On May 25, 2007, several creditors initiated involuntary Chapter 11 petitions against JHIS and Prewett. The bankruptcy court appointed Steven S. Oscher as trustee (the "Trustee") and consolidated the cases for administrative purposes. The Trustee subsequently removed Dunlap & Moran's interpleader action to bankruptcy court, initiating the adversary proceeding in this appeal. The Trustee filed a cross-claim against Zuppardo, seeking to avoid Zuppardo's interest in Unit 19 and the Sale Proceeds. Zuppardo filed a cross-claim seeking to recover his attorney's fees under the common fund doctrine.

The bankruptcy court entered a series of orders in the Chapter 11 case and adversary proceeding which resolved competing claims to the Sale Proceeds and condominium units. On February 20, 2008, the bankruptcy court granted the Trustee's motion for summary judgment on his cross-claim, determining that Zuppardo never held record title to Unit 19 and the Trustee could avoid his unrecorded equitable interest pursuant to 11 U.S.C. § 544. In the Chapter 11 case, the bankruptcy court entered an order approving a settlement agreement related to BC Properties' claims against the estate and quieting title to the fourteen condominium units in favor of BC Properties. The following

month, the bankruptcy court dismissed Zuppardo's cross-claims against Dunlap & Moran and BC Properties with prejudice. On July 22, 2008, the bankruptcy court granted the Trustee's motion for summary judgment on Zuppardo's claim to attorney's fees under the common fund doctrine, without prejudice to Zuppardo filing a general unsecured claim. Zuppardo moved for reconsideration of the prior orders, claiming he had discovered new evidence. The bankruptcy court denied the motion, and this appeal followed.

## II. *The notice of appeal*

Zuppardo's notice of appeal designated only the order denying his motion for reconsideration, but it referenced six prior orders that the bankruptcy court reaffirmed. The Trustee contends that Zuppardo has only properly appealed the order denying his motion for reconsideration. Under Federal Rule of Bankruptcy Procedure 8001(a), a notice of appeal must "(1) conform substantially to the appropriate Official Form, (2) contain the names of all parties to the judgment, order, or decree appealed from and the names, addresses, and telephone numbers of their respective attorneys, and (3) be accompanied by the prescribed fee." Rather than requiring an appellant to designate the specific judgment, order, or decree on appeal, the notice need only contain "the *names* of all parties" and "their respective attorneys." *Compare* Fed. R. Bankr. P. 8001(a)(emphasis added) *with* Fed. R. App. P. 3(c); *see United States v. Arkison (In re Cascade Rds., Inc.)*, 34 F.3d 756, 761 (9th Cir. 1994). The form referenced in Rule 8001(a), Official Form 17, suggests that an appellant "describe" the order.

A notice of appeal must be liberally construed. *KH Outdoor, LLC v. City of Trussville*, 465 F.3d 1256, 1260 (11th Cir. 2006). "[I]t is well settled that an appeal is not lost if a mistake is made in designating the judgment appealed from where it is clear that the overriding intent was effectively to appeal." *Id.* "This has resulted in the liberal allowance of appeals from orders not expressly

4

designated in the notice of appeal, at least where the order that was not designated was entered prior to or contemporaneously with the order(s) properly designated in the notice of appeal." *Id.* With the exception of the orders dismissing his cross-claim against BC Properties and Dunlap & Moran, Zuppardo's statement of issues on appeal evidences an intent to challenge the underlying orders. Moreover, the parties have fully briefed and argued the merits of the orders on appeal. *See Foman v. Davis*, 371 U.S. 178, 181 (1962) (notice of appeal designating post-judgment motion should be treated as appeal from final judgment where intention is sufficiently manifest and appellee is not misled). There has been no prejudice to the Appellees. Zuppardo's notice of appeal, liberally construed, is effective to appeal the motion for reconsideration and the underlying orders, with the exception of the two dismissal orders.[1]

## III. Jurisdiction

The district court has jurisdiction to review final and interlocutory orders arising from bankruptcy proceedings. 28 U.S.C. § 158(a). Appeals to the district court, whether from final or interlocutory orders, must be filed within ten days of entry. Fed. R. Bankr. P. 8001, 8002. The Trustee argues that the district court lacks jurisdiction to review several orders which Zuppardo failed to appeal within ten days of entry.

Although final orders are not reviewable if not immediately appealed, the rules do not require (or permit) litigants in bankruptcy proceedings to take an appeal of every interlocutory order. *Figueroa v. Wells Fargo Bank N.A.*, 382 B.R. 814, 820 (S.D. Fla. 2007) (district court does not have jurisdiction "over every order the bankruptcy court issues"); *see* 28 U.S.C. § 158(a)(3) (most

---

[1] In addition to not properly appealing the orders dismissing his cross-claim against BC Properties and Dunlap & Moran, Zuppardo did not "specifically and clearly" identify any arguments related to those orders in his briefs. *See Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004). "[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed." *Id.* Zuppardo has abandoned any arguments related to the dismissal of his cross-claim against BC Properties and Dunlap & Moran.

interlocutory orders may only be appealed with leave of district court). Interlocutory orders and rulings, to the extent they produce a final judgment, may be reviewed on appeal from that final judgment. *Toomey v. Wachovia Ins. Servs., Inc.*, 450 F.3d 1225, 1228 n.2 (11th Cir. 2006). Consequently, two issues must be addressed. First, did Zuppardo fail to effect a timely appeal of any *final* orders? Second, is Zuppardo attempting to appeal any interlocutory orders that did not merge into the final judgment sought to be reviewed in this appeal?

Because bankruptcy cases involve "an aggregation of controversies and suits," the concept of finality is given a more flexible interpretation in the bankruptcy context. *Barben v. Donovan (In re Donovan)*, 532 F.3d 1134, 1136 (11th Cir. 2008). "To be final, a bankruptcy order need not be the last order concluding the bankruptcy proceeding as a whole." *Dzikowski v. Boomer's Sports & Rec. Center, Inc. (In re Boca Arena, Inc.)*, 184 F.3d 1285, 1286 (11th Cir. 1999). However, it "must finally resolve an adversary proceeding, controversy, or entire bankruptcy proceeding on the merits and leave nothing for the court to do but execute its judgment." *Id.* "[A]dversary proceedings are generally viewed as equivalent to other types of lawsuits, such that final judgments issued in adversary proceedings are normally appealable in the same way as non-bankruptcy cases." *Slobodinsky v. Salkin (In re Saber)*, 264 F.3d 1317, 1324 n.11 (11th Cir. 2001) Accordingly, an order adjudicating fewer than all claims of all parties in the adversary proceeding is not a final order. *In re Boca Arena, Inc.*, 184 F.3d at 1286-87.

The final order that ultimately resolved all remaining claims in the adversary proceeding was the order granting summary judgment in favor of the Trustee on Zuppardo's cross-claim for attorneys' fees pursuant to the common fund doctrine. The prior orders in the adversary proceeding, therefore, did not constitute final orders. *See id.* The bankruptcy court had previously entered what was captioned a "Final Judgment" on the Trustee's cross-claim to avoid Zuppardo's interest in Unit

19 and the Sale Proceeds. However, the judgment on the Trustee's cross-claim did not resolve all claims of all parties in the adversary proceeding. Nor did that judgment contain a certification under Federal Rule of Civil Procedure 54(b) that "there is no just reason for delay." Fed. R. Bankr. P. 7054(a) (Rule 54(a)-(c) applies in adversary proceedings). The judgment on the Trustee's cross-claim did not constitute a final judgment or order for purposes of appeal. *Winfrey v. School Bd. of Dade County, Fla.*, 59 F.3d 155, 157 (11th Cir. 1995) (Rule 54(b) requires express determination of no just reason for delay); *Figueroa*, 382 B.R. at 821 (noting "any order granting partial disposition of an adversary proceeding is not final in the absence of strict compliance" with Rule 54(b)).

In the Chapter 11 case, the bankruptcy court approved a settlement of the controversy between BC Properties and the estate. An order approving a settlement agreement may constitute a final order when it finally resolves the matter and leaves "nothing more for the bankruptcy court to do" regarding the settlement agreement or controversy. *See, e.g., Martin v. Pahiakos (In re Martin)*, 490 F.3d 1272, 1275 (11th Cir. 2007). The order approving the settlement in this case, however, did not simply approve the settlement between BC Properties and the Trustee. It addressed issues regarding Zuppardo's interest in the condominium unit, which related to the adversary proceeding. This order was therefore inextricably intertwined with the claims in the adversary proceeding. Because this order did not finally resolve all claims in the adversary proceeding, it was not a final order from which Zuppardo could appeal, absent leave of court.

The final order granting summary judgment in favor of the Trustee on Zuppardo's common fund claim determined that the Sale Proceeds were property of the estate free and clear of any claims, liens, or encumbrances. Although the order expressly contemplated a separate final judgment, none was entered. *See* Fed. R. Bankr. P. 9021. As a result, final judgment was deemed entered 150 days after entry of the order. *See id.*; Fed. R. Civ. P. 58(c). The aforementioned orders which resulted

7

in the final judgment in the adversary proceeding therefore merged into the final summary judgment order. *See, e.g., Lind v. United Parcel Serv., Inc.*, 254 F.3d 1281, 1284 n.4 (11th Cir. 2001) (order granting partial summary judgment "from which no immediate appeal lies is merged into the final judgment and [is] reviewable on appeal from that final judgment.").

As discussed, the order approving the Trustee's settlement with BC Properties quieted title to Unit 19 and ordered Zuppardo to vacate the property, based on the earlier summary judgment which avoided Zuppardo's interest in the unit. The order approving the settlement was therefore inextricably intertwined with the adversary proceeding. The Court will review the order approving the Trustee's settlement with BC Properties in conjunction with the final judgment in the adversary proceeding.

Zuppardo's appeal of the final judgment was timely. Although he filed the notice of appeal before the separate final judgment was deemed entered, his appeal is treated as filed after the entry of final judgment. *See* Fed. R. Bankr. P. 8002(a); *FirsTier Mortgage Co. v. Investors Mortgage Ins. Co.*, 498 U.S. 269, 272-277 (1991) (premature notice of appeal ripens upon entry of judgment). Even without application of this rule, Zuppardo filed a motion for reconsideration within ten days of the last summary judgment order. Consequently, Zuppardo's notice of appeal, filed within ten days of the order denying his motion for reconsideration, effected a timely appeal. Even if Zuppardo's motion did not contain sufficient grounds for reconsideration, as the Trustee suggests, it nonetheless operated to toll the time to appeal. *See Colonial Bank v. Freeman (In re Pacific Forest Prods. Corp.)*, 335 B.R. 910, 918-19, n.7 (S.D. Fla. 2005). This Court is properly vested with jurisdiction to review each order Zuppardo has appealed.

*IV.  Standards of review*

Different standards of review govern the orders in this appeal. An order granting summary

judgment is reviewed *de novo*. *Gray v. Manklow (In re Optical Techs., Inc.)*, 246 F.3d 1332, 1334-35 (11th Cir. 2001). This Court applies the same legal standards applied by the bankruptcy court. All facts are viewed in a light most favorable to the non-moving party and all reasonable inferences are drawn in favor of the non-moving party. *See id.* Summary judgment is proper where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *See id.* The bankruptcy court's approval of a settlement agreement is reviewed for abuse of discretion. *Seacoast Nat. Bank v. Jordyn Holdings IV, LLC*, 392 B.R. 876, 879 (M.D. Fla. 2008). This Court will not disturb a bankruptcy court's order approving a settlement agreement in the absence of a "definite and firm conviction that the lower court has made a clear error of judgment or exceeded the bounds of permissible choice." *Id.* The bankruptcy court's denial of a motion for reconsideration is reviewed for abuse of discretion. *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 957 (11th Cir. 2009).

*V.     Discussion*

Zuppardo challenges four rulings of the bankruptcy court. First, he argues that genuine issues of material fact precluded entry of summary judgment on the Trustee's cross-claim. Second, he attributes error to the bankruptcy court's application of law in denying his recovery of attorney's fees under the common fund doctrine. Third, he argues that the bankruptcy court abused its discretion in approving the Trustee's settlement with BC Properties. Fourth, Zuppardo contends that the bankruptcy court abused its discretion in denying his motion for reconsideration following the discovery of new evidence. None of these challenges raise reversible error.

*A.     Zuppardo's interest in Unit 19 and the Sale Proceeds*

The bankruptcy court granted the Trustee's first motion for summary judgment based on three primary conclusions. First, Zuppardo's interest in Unit 19 and the Sale Proceeds was inferior

9

to the rights and interest of the Trustee. Second, the Trustee could avoid Zuppardo's unrecorded interest in Unit 19 under 11 U.S.C. § 544. Third, the Sale Proceeds were property of the estate. Zuppardo argues that genuine issues of material fact precluded summary judgment. He relies on the satisfaction of mortgage he recorded before the commencement of the bankruptcy case (but after BC Properties recorded its deed to Unit 19) and the failure of the condominium association's board of directors to approve the transaction with BC Properties.[2]

Under Florida law, a deed must be recorded in order to protect the grantee's interest in real property. The recording statute, Florida Statute § 695.01(1), provides: "[n]o conveyance, transfer, or mortgage of real property, or of any interest therein, nor any lease for a term of 1 year or longer, shall be good and effectual in law or equity against creditors or subsequent purchasers for a valuable consideration and without notice, unless the same be recorded according to law." It is undisputed that Zuppardo never recorded a deed or any other document evidencing his purchase of Unit 19 before March 29, 2007. There was no evidence that BC Properties had actual notice of Zuppardo's interest in Unit 19 before its transaction with JHIS closed on February 20, 2007. In accordance with § 695.01(1), BC Properties' warranty deed, recorded on February 26, 2007, vested it with title to Unit 19 superior to Zuppardo's interest in Unit 19. *See Rice v. Greene*, 941 So. 2d 1230, 1230-32 (Fla. 5th DCA 2006) (where two buyers purchased same property without notice, the first to record held superior title to property). The documents Zuppardo recorded after the recordation of BC Properties' warranty deed were ineffective as to BC Properties' title to Unit 19. *See id.*

Zuppardo contends that the transfer to BC Properties was never approved by the

---

[2] Zuppardo also relies on evidence that he did not submit until his motion for reconsideration, such as testimony that JHIS had previously entered into a contract to sell the property to a different buyer, which was never assigned to BC Properties. Any "new" evidence that Zuppardo failed to submit in opposition to the Trustee's motion for summary judgment can only be considered with respect to his appeal from the order denying his motion for reconsideration.

10

condominium association's board of directors and therefore was not "recorded according to law" within the meaning of Florida Statute § 695.01(1).

The Declaration of Condominium provides:

> Prior to the sale, lease or transfer of any unit to any person other than the transferor's spouse, the unit owner shall notify the Board of Directors of the Association in writing of the name and address of the person to whom the proposed sale, lease or transfer is to be made, and such other information as may be required by the Board of Directors.
>
> . . .
>
> If [the seller or transferor] fails to comply with the terms hereof, any other member shall have the right to redeem from the purchaser or lessee, subject to his reimbursing the purchaser or lessee for any monies expended, and immediately after such reimbursement, the purchaser or lessee shall convey all his right, title and interest to the member making the redemption.

According to the express language of the declaration, the failure to obtain board approval would not, as Zuppardo contends, invalidate the transaction or render it executory. At most, an association member would have the right to redeem the property "from the purchaser" upon reimbursing the purchaser "for any monies expended." Although the recorded Declaration of Condominium provided notice that board approval was required, the failure to obtain board approval did not nullify the sale. BC Properties simply took title to the units subject to the right of redemption created by the condominium documents.

Zuppardo relies on a "notice of redemption rights" he recorded on May 17, 2007. That notice excluded Unit 19 and related only to the remaining thirteen units. A careful review of the record on appeal demonstrates that Zuppardo did not argue in the bankruptcy court that he was entitled to

11

exercise a right to redeem the condominium units.[3] Zuppardo therefore cannot raise this issue for the first time on appeal. *See, e.g., Millennium Partners, L.P. v. Colmar Storage, LLC*, 494 F.3d 1293, 1304 (11th Cir. 2007). Nonetheless, as discussed, the existence of a redemption right would not invalidate the conveyance to BC Properties or nullify its recorded warranty deed.

In light of the foregoing, Zuppardo's only interest in Unit 19 and the Sale Proceeds was an unrecorded equitable interest. In granting the Trustee's motion for summary judgment, the bankruptcy court determined that the Trustee was able to avoid Zuppardo's unrecorded equitable interest. Under 11 U.S.C. § 544, the Trustee has the power to avoid certain interests that burden property of the estate. The statute provides:

> (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by--
>
> (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;
>
> . . .
>
> (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C. § 544. Due to his status as a judicial lienholder and bona fide purchaser for value, the Trustee's interest in Unit 19 and the Sale Proceeds was superior to Zuppardo's unrecorded equitable

---

[3] Without obtaining leave of court, Zuppardo filed an amended answer that included a cross-claim for, among other things, a declaratory judgment regarding his rights pursuant to the redemption notice. Zuppardo subsequently moved for leave to file the cross-claim. The bankruptcy court denied the motion in part, and Zuppardo filed an amended cross-claim, dropping the claim for declaratory relief. Zuppardo does not challenge this ruling on appeal.

interest. Zuppardo's interest, therefore, was avoidable under Section 544. *See Kapila v. Dye (In re Schiavone)*, 209 B.R. 751 (Bankr. S.D. Fla. 1997) (trustee assumes position of a bona fide purchaser and may avoid any unrecorded interest as of petition date); *Crews v. Brannon (In re Mabbott)*, 255 B.R. 787 (Bankr. M.D. Fla. 2000) (unperfected equitable security interest that debtor's mother acquired in property as a result of advancing funds for its improvement was inferior to strong-arm interests of trustee and could be avoided); *Grant v. Grantham (In re Eiland)*, 260 B.R. 301 (Bankr. M.D. Fla. 2000) (debtor's pre-petition transfer of real property to ex-spouse was unperfected, not recorded in the public records, and could be avoided by trustee).

Zuppardo failed to raise a genuine issue of material fact and the Trustee was entitled to judgment as a matter of law. The bankruptcy court properly granted the Trustee's motion for summary judgment.

### B. Common fund

Zuppardo seeks to recover his attorney's fees under the common fund doctrine, contending that his counsel's efforts brought $302,376.36 into the bankruptcy estate and benefited all creditors. He claims entitlement to one-third of the amount, which he argues should be paid directly out of the Sale Proceeds as a priority claim. The bankruptcy court found that Zuppardo could not satisfy the prerequisites for application of the common fund doctrine and denied his priority claim to attorney's fees. The order was without prejudice to Zuppardo filing a general unsecured claim.

Under the common fund doctrine, "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The doctrine is an exception to the American rule that each litigant must bear his own attorney's fees and rests on the principle that non-parties who reap substantial benefits from litigation without contributing to its cost

should not be unjustly enriched. *Id.* Accordingly, a court may assess a reasonable attorney's fee against the entire fund to distribute fees proportionately among those who have benefited. *Id.*

Under Florida law, the common fund doctrine arises where the litigant establishes:

> 1. The existence of a fund over which the court has jurisdiction and from which fees can be awarded;
>
> 2. The commencement of litigation by one party which is terminated successfully;
>
> 3. The existence of a class which received, without otherwise contributing to the lawsuit, substantial benefits as a result of the litigation;
>
> 4. The creation, preservation, protection or increase of the fund as a direct and proximate result of the efforts of counsel for that party;
>
> 5. A reasonable relationship between the benefit established and the fees incurred.

*Fidelity & Cas. Co. of N.Y. v. O'Shea*, 397 So. 2d 1196, 1198 (Fla. 2d DCA 1981).

The Sale Proceeds resulted directly from the sale of the fourteen condominium units to B.C. Properties. Zuppardo's counsel did nothing to "create" the funds. At most, he "preserved" the Sale Proceeds by informing Dunlap & Moran of the disputed claims and endeavoring to prevent disbursement to the sellers. Zuppardo's counsel did commence litigation, but the action only sought to recover that portion of Sale Proceeds related to his client's interest in Unit 19. There is no evidence that Zuppardo's lawsuit terminated successfully in his favor. In contrast, Dunlap & Moran's interpleader action preserved and protected the Sale Proceeds and brought them into the estate. Accordingly, Zuppardo fails to establish the prerequisites to recover attorney's fees under the common fund doctrine.

To support his claim to recover attorney's fees directly from the Sale Proceeds, with priority over other claimants, Zuppardo relies on *In re Willis*, 143 B.R. 428 (Bankr. E.D. Tex. 1992). There,

14

Willis engaged counsel on a contingency basis. *Willis*, 143 B.R. at 431. Following settlement, the opposing party forwarded a check to Willis' counsel, but Willis filed for bankruptcy protection before paying the agreed-upon contingency fee. *Id.* Applying the common fund doctrine, the bankruptcy court held that the debtor's pre-bankruptcy counsel could be paid directly out of the settlement proceeds in priority over other claimants. *Id.* at 434.

Other bankruptcy courts have declined to follow *Willis*, finding priority payments under the common fund doctrine inconsistent with the Bankruptcy Code. *See, e.g., In re Plaza*, 363 B.R. 517, 523 (Bankr. S.D. Tex. 2007); *In re Patton*, 358 B.R. 911, 915 (Bankr. S.D. Tex. 2007); *In re Coron, Inc.*, 161 B.R. 449, 451-54 (Bankr. N.D. Ill. 1993). In *Patton*, the bankruptcy court stated:

> The common fund doctrine only determines whether and how much an attorney should be paid for the work that produced the common fund. It does not establish the priority of that entitlement vis-à-vis other creditors of a bankrupt estate. In this case, awarding priority based on the common fund doctrine is not consistent with the priority scheme set out in the Bankruptcy Code. Any such inconsistency must be settled in favor of the Code.

*Patton*, 358 B.R. at 915.

The reasoning in *Patton* and similar cases is persuasive. "It is the nature of bankruptcy that creditors are often not paid in full." *Id.* at 916. The general intent of the Bankruptcy Code is to provide even distribution to all creditors, and "preferential treatment of a class of creditors is in order only when clearly authorized by Congress." *Howard Delivery Serv., Inc. v. Zurich Am. Ins. Co.*, 547 U.S. 651, 655 (2006). Section 507 is intended to be the exclusive list of priorities in bankruptcy. *Patton*, 358 B.R. at 915 (citing 3 COLLIER ON BANKRUPTCY ¶ 507.02, p. 507-11 (15th ed. 1992)). The common fund doctrine cannot be used to upset the scheme of priorities in the Bankruptcy Code. The bankruptcy court therefore correctly held that Zuppardo cannot rely on the common fund doctrine to recover his attorney's fees from the Sale Proceeds over and above other

15

creditors.

C.   *The Trustee's settlement with BC Properties*

Zuppardo raises two challenges to the bankruptcy court's order approving the settlement between the Trustee and BC Properties. First, Zuppardo argues that the bankruptcy court should not have approved the settlement because BC Properties gained property that Zuppardo had purchased. For the reasons discussed, the bankruptcy court did not err in quieting title to Unit 19 in favor of BC Properties. Second, Zuppardo contends that BC Properties' claims should not have been paid from funds which came into the bankruptcy estate as a result the efforts of Zuppardo's counsel. Zuppardo appears to base his argument on his claim to an interest in the Sale Proceeds and his claim to attorney's fees pursuant to the common fund doctrine. As discussed, the bankruptcy court did not err in determining that the Sale Proceeds were property of the bankruptcy estate or that the Trustee could avoid Zuppardo's interest in the Sale Proceeds. Likewise, there was no error in determining that Zuppardo's counsel was not entitled to recover attorney's fees from the Sale Proceeds under the common fund doctrine. Consequently, the bankruptcy court did not abuse its discretion in approving the settlement between the Trustee and BC Properties.

D.   *Reconsideration*

Zuppardo contends he was entitled to relief from the bankruptcy court's orders under Federal Rule of Civil Procedure 60(b) due to newly discovered evidence. Zuppardo claims that "very recent depositions" revealed that: (1) JHIS had entered into a contract to sell the condominium units to another purchaser, which was never assigned to BC Properties, (2) the other purchaser attempted to obtain the board's approval of the transaction, (3) an individual who happened to be a notary signed two of the deeds as a witness but scratched through his own signature to allow another person to sign as a witness, and (4) M.P.L. Holding Ltd., which sold two of the fourteen units to BC Properties, did

not obtain the approval of its shareholders prior to conveying the units. The bankruptcy court found its core holdings unaffected by the alleged newly discovered evidence and denied the motion for reconsideration.

The lower court "has sound discretion whether to alter or amend a judgment pursuant to a motion for reconsideration, and its decision will only be reversed if it abused that discretion." *Wilchombe*, 555 F.3d at 957. A party seeking relief under Rule 60(b)(2) based on newly discovered evidence must demonstrate that (1) the evidence is newly discovered since the court's decision, (2) he exercised due diligence to discover the evidence, (3) the evidence is not cumulative or impeaching, (4) the evidence is material, and (5) the evidence would produce a new result. *See Waddell v. Hendry County Sheriff's Office*, 329 F.3d 1300, 1309 (11th Cir. 2003).

Zuppardo's new evidence was not material and would not produce a different result.[4] Regardless of whether the property was under contract with another purchaser, BC Properties closed the transaction as purchaser and received the warranty deeds. That the other potential purchaser sought the board's approval is immaterial to the analysis. Despite arguing that M.P.L. Holding, Ltd. failed to obtain shareholder approval prior to the transaction, Zuppardo does not claim to be a shareholder. Moreover, M.P.L. Holding, Ltd. did not convey Unit 19.

Zuppardo next argues that Dunlap, who happens to be a licensed notary, altered two of the deeds that conveyed the condominium units to BC Properties. Zuppardo relies on Florida Statute § 117.107(7) which prohibits a notary public from changing a written instrument after it has been signed. Dunlap initially signed the deeds as a witness but crossed through his own signature to allow another person to witness the documents. However, Dunlap did not notarize the deeds. A different

---

[4] Although it is doubtful that the information could not have been obtained prior to the bankruptcy court's decisions (one of the deponents was the closing attorney and the other was the notary public who notarized the deeds), the bankruptcy court's order did not address Zuppardo's diligence, or lack thereof.

licensed notary, Nicole Baez, actually notarized both deeds. There is no evidence that Baez altered the deeds or that any changes were made after the deeds were notarized. Zuppardo has not provided any authority that would affect the bankruptcy court's orders. The bankruptcy court did not abuse its discretion in denying the motion for reconsideration.

*VI.   Conclusion*

The Court has carefully reviewed the parties' briefs and considered all of the arguments. Appellant's remaining arguments and contentions are without merit and need not be addressed. The bankruptcy court's orders (1) granting summary judgment in favor of the Trustee on his cross-claim, (2) approving the Trustee's settlement with BC Properties, (3) granting summary judgment in favor of the Trustee on Zuppardo's cross-claim, and (4) denying Zuppardo's motion for reconsideration, are **AFFIRMED**.

The Clerk is directed to close this case.

**DONE AND ORDERED** in chambers this 30th day of September, 2009.

_____
JAMES D. WHITTEMORE
United States District Judge

Copies to: Counsel of Record